**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

STEPHEN M.,                          )
                                     )
      Plaintiff,            )
                                     )        Case No. 17-cv-7608
    v.                         )
                                     )        Judge Robert M. Dow, Jr.
NANCY A. BERRYHILL, Acting,          )
Commissioner of Social Security,     )
                                     )
      Defendant.            )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Steven M.'s motion seeking review of the Commissioner of Social Security's decision to deny his application for disability benefits [9]. Plaintiff asks that the Court reverse the decision of the ALJ and remand this matter for an award of benefits or, in the alternative, reverse the decision of the ALJ and remand for additional proceedings. Also before the Court is the Commissioner's motion for summary judgment [17]. The Commissioner asks that the Court enter a judgment affirming the ALJ's decision. For the reasons stated below, the Court denies the Commissioner's motion for summary judgment [17]. The Court reverses the Commissioner's decision in part and remands this case for further proceedings consistent with this opinion. Civil case terminated.

**I.      Background[1]**

    **A.      Procedural History**

Plaintiff Steven M. previously worked as an inside sales representative for numerous employers. [A.R. 85.] He attended special education classes and completed one year of high school. [*Id.* at 217.] On January 9, 2014, Plaintiff applied for a period of disability and

---

[1] Because the parties do not dispute the ALJ's summary of the evidence, the Court cites to the ALJ's decision unless citation to the source material was more helpful.

disability insurance benefits, alleging that his disability began on July 23, 2010. [*Id*. at 76.] Specifically, Plaintiff alleged that he became disabled in July 2010 when he was 45 years old. [*Id*. at 187.] Plaintiff alleged the following impairments that limited his ability to work: (1) anxiety, (2) attention-deficit/hyperactivity disorder ("ADHD"), (3) learning disabilities, (4) depression, (5) asthma/chronic obstructive pulmonary disease, and (6) uncontrolled hypertension. [*Id*. at 216.]

The claim initially was denied on June 25, 2014 and again was denied on reconsideration on March 17, 2015. [*Id*. at 76.] Plaintiff filed a written request for hearing on May 14, 2015. [*Id*.] On June 22, 2016, Plaintiff appeared and testified at a hearing before Administrative Law Judge Barry A. Miller (the "ALJ"). [*Id*.] Also appearing and testifying at the hearing were impartial medical expert Mark I. Oberlander, Ph.D. and impartial vocational expert Caroline Ward-Kniaz. [*Id*.] Plaintiff was represented by counsel Jeffrey A. Rabin and James Leeny, attorneys with Rabin, Kodner, & Brown/Jeffrey A. Rabin & Associates. [*Id*.] Following that decision, Plaintiff filed suit in this Court, which has jurisdiction under 42 U.S.C. § 405(g).

## B. Relevant Medical Evidence

As discussed above, Plaintiff alleged disability due to anxiety, ADHD, learning disabilities, depression, asthma, chronic pulmonary disease, and uncontrolled hypertension. [*Id*. at 82.] He was on medication for his conditions, including Acetaminophen for pain, Albuterol for breathing issues, Alprazolam (Xanax) for stress and anxiety, Hydrochlorothiazide and Metoprolol for blood pressure, Oxycontin for pain management, and Omeprazole for gastroesophageal reflux disease. [*Id*. at 82.] In his Disability Report-Appeal, Plaintiff alleged worsening of his pain, fatigue, anxiety, and depression in December 2013 and again in January 2015. [*Id*. at 257, 264.] Plaintiff described limited activities of daily living. [*Id*. at 82.]

Plaintiff's wife explained that Plaintiff became depressed, anxious, paranoid, bitter, and broken after years of fighting allegations that he molested his daughter. [*Id*. at 237.] She further explained that Plaintiff had been trying to prove his innocence and to repair his relationship with his daughter. [*Id*.] Plaintiff's wife noted that Plaintiff had problems with authority figures, managers, and people who did not do things his way. [*Id*. at 235.] She further reported that Plaintiff left a job based on a "mutual agreement" that Plaintiff no longer could continue working because Plaintiff had "too many outbursts[.]" [*Id*. at 236.] Supporting that representation, Plaintiff submitted a letter from Plaintiff's former employer discussing Plaintiff's "continued emotional outbursts" and giving Plaintiff the option of returning to work with a "proper and professional attitude" or resigning. [*Id*. at 289.]

On April 2011, Plaintiff was seen by Dr. Melissa Martinkus at Lake County Health Department and Community Health Center ("Lake County") for body pain. [*Id*. at 83.] Plaintiff was assessed to be a smoker and user of alcohol with abdominal pain and onychomycosis in the first right toe. [*Id*.] When Plaintiff returned a few weeks later in May 2011, he reported anxiety due to stressors (specifically, a custody fight for his daughter). [*Id*.] He was described as having anxiety and was referred to a Dr. Schell. [*Id*.] Plaintiff again returned to Lake County in June 2011 with complaints of back pain after using a weed-whacker. [*Id*.] Plaintiff was given Flexeril and Vicodin. [*Id*.] When visiting Lake County again in January 2012 with complaints of abdominal, arm, and back pain, Plaintiff also complained of anxiety and was prescribed Xanax on an as-needed basis. [*Id*.] He also was referred to psychiatry. [*Id*.]

In March 2012, Plaintiff underwent a colonoscopy and upper GI endoscopy. [*Id*.] At that time, Plaintiff denied any difficulty ambulating or completing activities of daily living. [*Id*.] He also was noted to be neurologically grossly intact and oriented with appropriate mental status.

[*Id*. at 306.]  A couple weeks later, Plaintiff returned to Lake County reporting that he still occasionally was anxious, but that he had only been anxious once since February 2012.  [*Id*. at 83.]  His mood was noted as stable and he had a normal affect.  [*Id*.]

In January 2013, Plaintiff returned to Lake County and saw Dr. Luma Sukkar.  [*Id*.] Records indicate that Plaintiff's anxiety was improving and that he declined a psychiatric referral.  [*Id*. at 334.]  Plaintiff continued to take Alprazolam once per day as needed.  [*Id*.] Three months later, Plaintiff returned to Lake County and requested refills on his Alprazolam and his hypertension medications.  [*Id*. at 83.] Plaintiff again complained of stress related to his child custody battle.  [*Id*.]  He was encouraged to seek behavioral health treatments, but he declined.  [*Id*. at 84.]  In October 2013, Plaintiff saw Dr. Esther Liu at Lake County for anxiety and hypertension.  [*Id*.]  Plaintiff indicated that his anxiety was associated with chronic pain and was "very bad and getting worse."  [*Id*. at 325.]  Plaintiff had a stress test and was told that his chronic pain was due to his stress/anxiety.  [*Id*.]  It also was noted that Plaintiff became "very angry/emotional" when he talked about his daughter's case.  [*Id*. at 326.]  When Plaintiff returned for a follow-up appointment in February 2014, he again complained of anxiety.  [*Id*. at 84.]  His anxiety was noted as stable, and he was not taking Alprazolam every day.  [*Id*.]  But he again refused a psychiatric referral.  [*Id*.]

In February 2014, Plaintiff saw Dr. Micahel Sommerfeld for almost unbearable right knee pain.  [*Id*.]  Plaintiff was not taking any medication at that time.  A neurological examination revealed a normal mental status.  [*Id*.]  When Plaintiff returned in May 2014, he denied any pain and his mental status examination was normal.  [*Id*.]  Plaintiff again saw Dr. Sommerfeld approximately eight months later in January 2015.  Although he reported feeling

well, Plaintiff stated that he had severe anxiety and was taking Xanax two to three times a day. [*Id*.] His mental status examination again was normal. [*Id*.]

In October 2013, after Plaintiff was referred by his attorney, Plaintiff started receiving treatment at Youth and Family Counseling from psychotherapist, Kyle Parmelee, MSW/LSW. [*Id*. at 88.] Mr. Parmelee diagnosed Plaintiff with severe adjustment disorder with mixed depression and anxiety. [*Id*.] Mr. Parmelee noted that Plaintiff exhibited daily anxiety and depression manifested by limited attention, poor focus, poor memory, inconsistent sleep patterns, anxiety with panic attacks, and depressive thoughts. [*Id*.] In May 2016, Mr. Parmelee noted diagnoses of numerous disorders, resulting in poor capacity to cope with anxiety in public, short attention span, difficulty planning, and difficulty with concentration and memory. [*Id*.] Mr. Parmelee concluded that Plaintiff was not able to function in a competitive work setting forty hours per week. [*Id*.] These conclusions were repeated in June 2016 correspondence. [*Id*.]

### C.    The June 22, 2016 Hearing before the ALJ

On June 22, 2016, the ALJ held a hearing regarding the denial of disability benefits to Plaintiff. Plaintiff appeared and testified at a hearing before the ALJ. [*Id*. at 76.] Plaintiff was represented by attorneys Jeffrey A. Rabin and James Leeny. [*Id*.] Also appearing and testifying at the hearing were impartial medical expert Dr. Oberlander and impartial vocational expert Ms. Ward-Kniaz. [*Id*.]

### 1.    *Plaintiff's Testimony*

Plaintiff testified that he has held a number of sales jobs. [*Id*. at 85.] However, he had not worked full-time since July 2010, primarily because of his involvement in a lengthy and highly emotional court battle stemming from molestation allegations. [*Id*.] He saw a psychiatrist years ago at Lake County, but he had not seen a psychiatrist in recent years. [*Id*.] At the time of

the hearing, Plaintiff still was taking Xanax. [*Id.*] Plaintiff testified that he was paranoid whenever he went out. [*Id.*] He did not leave the house very often, and he was worried about being attacked because of information available to others. [*Id.*] He typically stayed home on the couch, but he tried to keep the house tidy. [*Id.*] There were days when he did not get out of bed. [*Id.*] Although he infrequently went out, he did go to his boat in Kenosha because he felt "safe" there. [*Id.*] He cooked once or twice a week, and he occasionally went to the grocery store. [*Id.*] He had panic attacks all the time. [*Id.*] He did have a few friends who he sometimes saw. [*Id.*] Plaintiff confirmed that he had been attending counseling with Mr. Parmalee at Youth and Family Counseling in Libertyville since October 2013 and that he saw him on a regular basis every other week. [*Id.*]

## 2. *Testimony of Medical Expert*

The ALJ obtained testimony from an impartial clinical psychologist Mark I. Oberlander, Ph.D. [*Id.*] After reviewing the entire record and hearing Plaintiff's testimony, Dr. Oberlander explained that Plaintiff had serious difficulties in modulating affect. [*Id.* at 86.] Dr. Oberlander identified an impairment of major depressive disorder. [*Id.*] Dr. Oberlander also identified an impairment of an anxiety related disorder primary dealing with two different strands—panic disorder and PTSD. [*Id.*] Dr. Oberlander testified that Plaintiff had mild impairments in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. [*Id.*] Dr. Oberlander testified that prior to the date of last insured, Plaintiff retained the functionality for engagement in simple routine, repetitive work activities. [*Id.*] Dr. Oberlander went on to conclude that Plaintiff retained the functionality of being able to react appropriately to changes in work setting, but that the work setting should not involve high production rates. [*Id.*] Given Plaintiff's moderate

social difficulties, Dr. Oberlander also concluded that the work setting should be relatively independent, solitary work and not involve teamwork. [*Id*.] Dr. Oberlander further concluded that Plaintiff retained the capacity to work in proximity to others, with only occasional contact with supervisors, coworkers, and others. [*Id*.]

### 3. *The Testimony of the Vocational Expert*

Based on the limitations identified by the ALJ and discussed below, the vocational expert testified that Plaintiff would have been able to perform the requirements of representative occupations such as hand packager, sorter, and assembler. [*Id*. at 90.] In response to a hypothetical question posed by the ALJ, the vocational expert testified that Plaintiff would not be able to sustain employment if he had two "emotional or angry outbursts" directed at a co-worker, supervisor, or the public, depending on the employer and the circumstances. [*Id*. at 50-51.]

### D. The ALJ's Findings

The ALJ found that Plaintiff was insured until March 31, 2014. [*Id*. at 78.] The ALJ also found that Plaintiff's impairments caused many mental functional limitations, but that Plaintiff could perform work as a hand packager, sorter, and assembler. [*Id*. at 78, 82, 90.] In his written decision, the ALJ therefore found that Plaintiff was not under a disability within the meaning of the Social Security Act from July 22, 2010 through the date last insured. [*Id*. at 76.]

In reaching that conclusion, the ALJ identified major depressive disorder, possible adjustment disorder, and possible PTSD as Plaintiff's severe impairments. [*Id*. at 78.] Although the ALJ concluded that Plaintiff's determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." [*Id*. at 87.] The ALJ further found that

Plaintiff's allegations were "less than fully corroborated by the record." [*Id.*] According to the ALJ, Plaintiff's "description of the severity and limitations from anxiety have been so extreme as to appear implausible in the absence of additional and/or ongoing treatment." [*Id.*] The ALJ went on to note that Plaintiff was able to engage in significant amount of normal level of daily activities, such as personal care, driving, cooking, shopping, cleaning, and using the computer. [*Id.*] The ALJ found that these activities were consistent with the residual functional capacity ("RFC") identified in the ALJ's decision but were inconsistent with Plaintiff's allegations of disability. [*Id.*] The ALJ also noted that Plaintiff continuously refused psychiatric referrals. [*Id.* at 89.]

The ALJ determined that the testimony of Dr. Oberlander was highly credible, giving his opinions as an impartial witness "great weight" in his analysis. [*Id.* at 87.] However, the ALJ gave the opinions from Mr. Parmelee "very little weight" for several reasons, including the fact that the opinions were not from an acceptable medical source (as Mr. Parmelee was a social worker) and Mr. Parmelee's failure to keep detailed records. [*Id.* at 88.] The ALJ also noted that Plaintiff only sought care from Mr. Parmelee after he retained counsel. [*Id.* at 89.] Finally, the ALJ gave "some weight" to the statements by Plaintiff's wife. [*Id.*] After determining what weight to give to the evidence before him, the ALJ concluded that Plaintiff's impairments "limit [him] to simple, routine, repetitive work" with "no hourly production rates." [*Id.*] The ALJ further limited Plaintiff to work with "only occasional contact with supervisors, co-workers, and the public" and "no teamwork." [*Id.*]

The ALJ concluded that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. [*Id.* at 90.] Based on the vocational expert's testimony, the ALJ concluded that Plaintiff was capable of making a

successful adjustment to other work that existed in significant numbers in the national economy and that Plaintiff therefore was "not disabled." [*Id*.]

## III.    Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and related regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing previous work, but, considering age, education, and work experience, it also must prevent him from engaging in any other type of substantial gainful work that exists in significant numbers in the national economy. *Id*. at § 423(d)(2)(A).

Social Security regulations enumerate a five-step inquiry to evaluate whether the claimant is entitled to disability insurance benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step 1, the ALJ determines if the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled, and the claim is denied. If not, the inquiry proceeds to the next step. *Id*. at § 404.1520(a)(4)(i). At Step 2, the ALJ determines if the claimant has a severe impairment or combination of impairments that is severe. If not, the claimant is not disabled, and the claim is denied. If so, the inquiry proceeds to the next step. *Id*. at § 404.1520(a)(4)(ii). At Step 3, the ALJ determines if the impairment(s) meet or equal a listed impairment in the appendix to the relevant regulations (20 C.F.R. § 404, Subpart P, Appendix 1). If so, the claimant is automatically considered disabled. If not, the inquiry proceeds to the next step. *Id*. at § 404.1520(a)(4)(iii). At Step 4, the ALJ determines if the claimant can perform past relevant

work, which involves consideration of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)(citations omitted). "The RFC must be assessed based on all the relevant evidence in the record." *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). If the ALJ determines that the claimant can perform past relevant work, the claimant is not disabled, and the claim is denied. If not, the inquiry proceeds to the next step. 20 C.F.R. § 404.1520(a)(4)(iv). At Step 5, the ALJ determines whether the claimant can perform other work, given his RFC, age, education, and experience. If so, then the claimant is not disabled, and the claim is denied. If not, then the claimant is disabled. *Id*. at § 404.1520(a)(4)(v); accord *id*. at § 416.920(a)(4)(i)-(v). The burden of proof is on the claimant for Step 1 through Step 4. *Young*, 362 F.3d at 1000. "If the claimant makes it past step four, the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy." *Id*. (citation omitted).

## IV.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Social Security Administration and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ thus will reverse the findings of the Commissioner "only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 40 (1971)). A court reviews the entire administrative record, but does not

"reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation and internal quotation marks omitted). In other words, the question upon judicial review is not whether the claimant is, in fact, disabled; even if reasonable minds could differ concerning disability, a reviewing court will affirm so long as the ALJ applied the correct legal standard and substantial evidence supported the decision. See *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

An ALJ must build "accurate and logical bridge" from the evidence to her conclusion. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (citation and internal quotation marks omitted)). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). See also *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded." (citations omitted)). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

## V.    Analysis

Plaintiff challenges three aspects of the ALJ's decision. First, Plaintiff argues that the ALJ failed to address evidence of Plaintiff's panic attacks and trouble controlling his temper. Second, Plaintiff argues that the ALJ improperly evaluated Plaintiff's subjective allegations. Finally, Plaintiff argues that the ALJ improperly relied on the unreliable testimony of the vocational expert. The Court addresses these issues in turn below.

## A.    Evidence of Panic Attacks and Temper

Plaintiff first argues that the ALJ erred by failing to consider evidence of Plaintiff's (1) panic attacks, and (2) trouble controlling his temper.  With respect to the former argument, Plaintiff argues that the ALJ should have considered whether an off-task accommodation should have been included in Plaintiff's RFC assessment.  The vocational expert testified that employers customarily expect their employees to be on task for 90 percent of the workday.  [A.R. 50.]  The Commissioner argues that Plaintiff has not identified any evidence indicating that Plaintiff would be off-task.  [18, at 12.]  However, as noted by the ALJ, impartial medical expert Dr. Oberlander stated that Plaintiff has "moderate limitations on concentration, persistence, and pace."  [A.R. 86.]  Furthermore, Plaintiff and his wife provided statements about his anxiety and difficulty concentrating.  [See, *e.g., id*. at 235 (discussing Plaintiff's "short attention span").]  The ALJ even discussed some of this evidence.  For example, the ALJ concluded that Plaintiff had a severe post-traumatic stress disorder [*id*. at 78], a condition with anxiety symptoms.  In light of this evidence and the fact that the ALJ asked a question about off-task time, the Court agrees that the ALJ's failure to address off-task time warrants remand.  *Winsted v. Berryhill*, 2019 WL 1941179, at *4 (7th Cir. Feb. 8, 2019) ("Because the ALJ did not include [claimant's] difficulties with concentration, persistence, and pace in the hypothetical he did consider, the decision cannot stand."); see also *Kukec v. Berryhill*, 2017 WL 5191872, at *3 (N.D. Ill. Nov. 9, 2017) (reversing and remanding decision where the ALJ "failed to come to any conclusion regarding the off-task time she asked the VE to consider").

To the extent that Plaintiff challenges whether the ALJ gave proper consideration to Plaintiff's temper and anger problems, the Court agrees that the ALJ failed adequately to address that issue.  Although the ALJ's decision references Plaintiff's anger issues, the ALJ did not

sufficiently address whether Plaintiff's condition was such that a certain hypothetical addressed by the vocational expert was relevant. Specifically, Plaintiff notes that the vocational expert testified that he would not be able to sustain employment if he had two "emotional or angry outbursts" directed at a co-worker, supervisor, or the public. [9, at 9.] But the ALJ failed to address this testimony. It is reversible error for an ALJ to elicit testimony from a vocational expert only to ignore the testimony without any explanation. See, *e.g., Sayles v. Barnhart*, 2001 WL 1568850, at *9 (N.D. Ill. Dec. 7, 2001) ("The fundamental problem with the ALJ's determination is that both in the body of her ruling and in her findings, she addressed the VE's opinion in response to only one of the hypotheticals—the first one—and disregarded the others." (internal citations omitted)). To be sure, the ALJ need only consider relevant hypotheticals. *Cf. Keiber v. Astrue*, 2009 WL 3188065, at *12 (N.D. Ill. Sept. 30, 2009) (holding that ALJ did not commit reversible error by failing to consider hypotheticals describing "an individual that was significantly more limited than the ALJ ultimately found [claimant] to be"). However, from the ALJ's decision, the Court is unable to determine whether the hypotheticals identified by Plaintiff were relevant to the ALJ's analysis. Specifically, it is not clear that the hypotheticals identified by Plaintiff described an individual who was significantly more limited than the ALJ ultimately found Plaintiff to be. The ALJ's decision does discuss the testimony of the medical expert Dr. Oberlander, who concluded that Plaintiff did "retain the capacity to work in proximity to others, with only occasional contact with supervisors, coworkers, and others." [A.R. 86; see also A.R. 43.] Still, there is no discussion of whether Plaintiff was at risk of having one or more "emotional or angry outbursts" directed at a co-worker, supervisor, or the public.

The Commissioner argues that it was Plaintiff's burden to submit "medical evidence establishing [his] impairments and [his] residual functional capacity." [18, at 8 (quoting *Punzio*

*v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011)) (internal quotation marks omitted).] Plaintiff responds that such evidence was before the ALJ. Specifically, Plaintiff presented a letter from his former employer discussing Plaintiff's "continued emotional outbursts" and giving Plaintiff the option of returning to work with a "proper and professional attitude" or resigning. [A.R. 289.] Furthermore, Plaintiff's wife indicated that Plaintiff has problems getting along with "authority figures, managers, and people who don't do things * * * his way." [*Id*. at 235.] Plaintiff's wife further noted that Plaintiff is "very short tempered." [*Id*.] Most importantly, as the ALJ noted, Dr. Oberlander recognized Plaintiff's limitations, concluding that Plaintiff retained the capacity to work in proximity to others, but only with occasional contact with supervisors, coworkers, and others. [*Id*. at 86.] This evidence makes the question posed to the vocational expert about emotional or angry outbursts potentially relevant. Based on the ALJ's decision, however, the Court is unable to determine why the ALJ disregarded the hypothetical. "The ALJ * * * must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft*, 539 F.3d at 673 (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). The ALJ did not do so here.

The Commissioner further argues that the ALJ was not obliged to address the hypothetical because "it is difficult to generalize about the effects of outbursts on one's employment, without knowing precisely the nature and character of the outbursts." [18, at 8.] If that is the case, the ALJ could have posed additional questions to determine whether a person with Plaintiff's characteristics was at risk of having two or more of the type of outburst that

would result in termination. The ALJ's failure to address the testimony of the vocational expert's hypothetical warrants remand.

### B. Plaintiff's Subjective Allegations

Plaintiff argues that the ALJ improperly evaluated Plaintiff's subjective allegations. Under Ruling 96-7p, in determining the credibility of a claimant's statements, the ALJ "must consider the entire case record," provide "specific reasons for the finding on credibility, supported by the evidence in the case record," and must "be sufficiently specific to make clear to the individual and to any subsequent reviewers the * * * reasons for [the] weight" given to the claimant's allegations. SSR 96-7p, 1996 WL 374186, at *1-2 (July 2, 1996); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (the ALJ must "justify the credibility finding with specific reasons supported by the record"). The Court gives "considerable deference" to an ALJ's credibility finding and only overturns it if "patently wrong." *Terry*, 580 F.3d at 477.

Plaintiff argues that the ALJ failed to sufficiently support his credibility determination. To begin, Plaintiff takes issue with the following "boilerplate" from the ALJ's decision: "[T]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [A.R. 87.] Plaintiff challenges the following "boilerplate" on the same basis: "The undersigned finds [Plaintiff's] allegations less than fully corroborated by the record." [*Id.*] Plaintiff contends that these "boilerplate" statements are improper because they do not communicate what weight the ALJ actually gave to the claimant's statements. [9, at 12.]

Although Plaintiff is correct that an ALJ may not use mere boilerplate statement to support a credibility determination, see *Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir. 2012),

the use of "boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). Here, as the Commissioner points out, the ALJ went on to conclude that Plaintiff's "description of the severity and limitations from anxiety have been so extreme as to appear implausible in the absence of additional and/or ongoing treatment." [A.R. 87.] The ALJ further observed that Plaintiff "was able to engage in large number of somewhat normal level of daily activity and interaction." [*Id*. at 87.] The ALJ added that Plaintiff "performed personal care, drove, cooked, shopped, cleaned, and used the computer." [*Id*. at 87.] The ALJ found these facts consistent with the RFC identified by the ALJ but inconsistent with Plaintiff's allegations regarding the severity of his severe impairments. [*Id*.] Because the ALJ went on to explain the challenged statements that Plaintiff characterizes as "boilerplate," the ALJ did not commit reversible error by also including the "boilerplate" language. See *Hammerslough v. Berryhill*, 758 F. App'x 534, 539 (7th Cir. 2019) ("The phrase 'not entirely credible' is meaningless boilerplate only when the ALJ substitutes it for a proper, full-bodied explanation of why credibility is lacking."); see also *Mendel R. v. Berryhill*, 2019 WL 1858510, at *8 (N.D. Ill. Apr. 25, 2019) ("The Court agrees that such boilerplate is meaningless, but it is also 'innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony.'" (quoting *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013)); *cf. Richard F. v. Berryhill*, 2019 WL 1651734, at *7 (N.D. Ill. Apr. 17, 2019) ("Plaintiff correctly points out that courts have taken issue with the language that the ALJ used because it fails to explain what parts of a claimant's allegations were consistent with the record and what parts were not.").

Plaintiff further submits that the reasons the ALJ offered for rejecting Plaintiff's testimony were improper and require remand. Specifically, Plaintiff argues that the ALJ erred by (1) "equating activities of daily living to be able to complete a 40-hour workweek," and (2) concluding that Plaintiff's descriptions of the severity of his impairments was inconsistent with the sporadic treatment he received.

With respect to the former argument, the Seventh Circuit has consistently recognized that the failure to recognize the differences between activities of daily living and activities in a full-time job "is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (collecting cases); see also *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("The administrative law judge's casual equating of household work to work in the labor market cannot stand."). Although it would have been improper for the ALJ to have concluded that Plaintiff was able to complete a 40-hour workweek because he was able to engage in a large number of daily activities, whether Plaintiff can engage in "daily activities" is relevant to evaluating "the intensity, persistence, and limiting effects of symptoms[.]" Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

With respect to the latter argument, however, the Court agrees that the ALJ committed reversible error by drawing inferences about Plaintiff's lack of treatment without exploring reasons for the inaction. Although a lack of consistent psychiatric care can factor in symptom evaluation, *Nicholson v. Astrue*, 341 F. App'x 248, 252 (7th Cir. 2009) ("[Plaintiff] also testified that he was not seeing a psychiatrist or psychologist for his depression. * * * This lack of treatment supports the ALJ's adverse credibility finding."), "an ALJ must not draw inferences about a claimant's lack of treatment without exploring the reasons for the inaction." *Ray v.*

*Berryhill*, 915 F.3d 486, 490-91 (7th Cir. 2019) (citing *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014)); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (noting that "failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure"). The Commissioner argues that Plaintiff has not provided any evidence indicating that the gaps in his treatment were due to a lack of medical insurance or due to other limitations resulting from his mental limitations. While that may be the case, the Commissioner fails to cite to anything in the record indicating that the ALJ explored the reasons for the inconsistent treatment. That omission is reversible error. *Ray*, 915 F.3d at 490.

It may be the case that Plaintiff has no explanation for "the absence of additional and/or ongoing treatment." However, it also is possible that Plaintiff did not seek additional treatment because of his mental limitations. For example, in *Kangail v. Barnhart*, the Seventh Circuit held that the ALJ committed reversible error by failing to consider the possibility that the claimant's bipolar disorder prevented her from taking her prescribed medications or otherwise submitting to treatment. 454 F.3d 627, 630 (7th Cir. 2006). The Commissioner argues that this case is inapplicable here because Plaintiff does not have bipolar disorder, which causes particular problems the court found relevant. [18, at 14.] The Court recognizes that Plaintiff has not been diagnosed with bipolar disorder (and there is no other evidence indicating that he suffers from the disorder). Still, as the ALJ noted, Plaintiff's doctors repeatedly gave Plaintiff psychiatric referrals, which he refused. [A.R. 83-84.] One of Plaintiff's doctors also "encouraged [Plaintiff] to seek behavioral health treatments but [Plaintiff] declined." [*Id*. at 84.] Because the ALJ did not inquire into Plaintiff's reasons for not seeking treatment, the Court is unable to evaluate whether the absence of additional and/or ongoing treatment is inconsistent with Plaintiff's

statements regarding the severity of his symptoms. The Court therefore remands the case for consideration of why Plaintiff did not seek additional treatment.

Finally, Plaintiff argues that the ALJ applied the incorrect legal standard. Specifically, Plaintiff argues that "the applicable standard is not whether or not [Plaintiff's testimony was 'entirely consistent' with the record; rather the ALJ must base his finding on a 'preponderance of the evidence.'" [9, at 13 (citations omitted).] Although the Court already has concluded that the ALJ committed reversible error, the Court also will address this argument for the sake of completeness. While the Court agrees with Plaintiff's statement of the correct legal standard, 20 C.F.R. § 404.953(a) ("The administrative law judge must base the decision on the *preponderance of the evidence* offered at the hearing or otherwise included in the record." (emphasis added)), the Court disagrees with Plaintiff's characterization of the ALJ's decision. While the ALJ concluded that Plaintiff's testimony was not entirely consistent with the record, that observation related to the ALJ's discussion of Plaintiff's credibility, not in reference to the overall evidence presented by Plaintiff. Plaintiff has not cited to any other statement in the ALJ's decision indicating that the ALJ failed to apply the correct legal standard (*i.e.*, the preponderance of the evidence standard) to his analysis of the evidence as a whole. Plaintiff therefore is not entitled to remand on that basis.

### C.     Vocational Expert's Testimony

Plaintiff also argues that the ALJ improperly relied on the unreliable testimony of the vocational expert in determining what work Plaintiff could perform. Specifically, Plaintiff argues that the vocational expert improperly concluded that Plaintiff could work as a hand packager, sorter, or assembler even though—according to Dr. Oberlander—Plaintiff would not have the sustained capacity for fully understanding, fully remembering, and successfully

executing more detailed and complex work instructions. [A.R. 43.] According to Plaintiff, the vocational expert's conclusion that Plaintiff could work as a hand packager, sorter, or assembler was inconsistent with the Dictionary of Occupational Titles ("DOT"), which classifies all three of those positions as "Reasoning Level 2" jobs requiring the performance of "detailed but uninvolved written or oral instructions." See DOT 920.587-018, 1991 WL 687916 (hand packager); DOT 609.685-010, 1991 WL 684913 (sorter); DOT 709.684-014, 1991 WL 679107 (assembler). Plaintiff maintains that the DOT description for Reasoning Level 2 conflicts with a hypothetical limitation, based on medical expert Dr. Oberlander's testimony, that Plaintiff does not have "sustained capacity for fully understanding, fully remembering, as well as successfully executing more detailed and complex work instructions." [A.R. 43, 49.] The Commissioner responds that there is no apparent conflict between the limitation and the DOT and, to the extent that Plaintiff claims that there was a conflict that was not apparent, it was Plaintiff's obligation to raise that argument at the hearing. In the alternative, the Commissioner argues that even if there was a conflict between the vocational expert's testimony and the DOT, there was no error because the ALJ did not rely on that testimony, as the ALJ did not adopt Dr. Oberlander's conclusion that Plaintiff could not follow "more detailed and complex work instructions." [18, at 6.]

"The DOT assigns each job a General Educational Development (GED) score, which 'embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012) (quoting Dep't of Labor, Dictionary of Occupational Titles, App'x C(III)) (internal quotation marks omitted). "The GED scale is composed of three divisions-reasoning development, mathematical development, and language development." *Id*. (citation omitted). Reasoning

Development Level 2—the level relevant to this case—states: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, App'x C(III).

As another court in this district recently noted, "Courts in this jurisdiction have not reached a consensus regarding the relationship between simple tasks under the DOT and the Social Security regulations." *Mendel R. v. Berryhill*, 2019 WL 1858510, at *6 (N.D. Ill. Apr. 25, 2019). "Some courts have remanded cases to resolve a perceived conflict between VE testimony that a person limited to simple, routine tasks could perform jobs with a DOT reasoning level of two, and the DOT's description of reasoning level two jobs as requiring the carrying out of 'detailed but uninvolved written or oral instructions.'" *Id.* (collecting cases). However, other courts have found no inherent inconsistency between simple work restrictions and Reasoning Level 2 or Reasoning Level 3 positions. See, *e.g., Stile v. Colvin*, 2017 WL 2908783, at *8 (N.D. Ill. July 7, 2017); *Mendel R. v. Berryhill*, 2019 WL 1858510, at *6 (N.D. Ill. Apr. 25, 2019). The Court finds the latter cases to be more persuasive. "[T]he Social Security regulations and the DOT use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties. The regulations divide such abilities into only two categories—'short and simple instructions' and 'detailed' or 'complex' ones—whereas the DOT uses a more graduated scale ranging from one to six that does not easily accommodate itself to the regulations' simple/complex dichotomy." *Thompkins v. Astrue*, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010) (citations omitted); see also *Stile*, 2017 WL 2908783, at *8 ("Based on this variation between the regulations and the DOT, * * * courts have found that Level 2 is not inconsistent with a claimant's limitation to simple, routine tasks." (citation omitted)). This

approach also is consistent with the Seventh Circuit's decision in *Sawyer v. Colvin*, which held that there was no apparent inconsistency between a restriction that a claimant be restricted to "simple tasks" and the conclusion that she could perform jobs at Reasoning Level 3. 512 F. App'x 603, 610 (7th Cir. 2013).

The Court agrees that the ALJ has an "affirmative responsibility" to determine whether a vocational expert's testimony conflicts with the dictionary. *Terry*, 580 F.3d at 478. "Social Security Ruling 00-4p directs that ALJs '[i]dentify and obtain a reasonable explanation for any conflicts' between a vocational expert's testimony and the dictionary, and also 'explain in the determination or decision how he or she resolved the conflict.'" *Sawyer v. Colvin*, 512 F. App'x 603, 610 (7th Cir. 2013) (quoting SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)); see also *Terry*, 580 F.3d at 478 ("[T]he ALJ has an 'affirmative responsibility' to ask if the VE's testimony conflicts with the DOT, and if there is an 'apparent conflict,' the ALJ must obtain 'a reasonable explanation.'" (quoting SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000))); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the Dictionary's—for the Dictionary, after all, just records other unexplained conclusions and is not even subject to cross-examination."). Still, where an applicant's counsel fails to identify any conflicts at the time of the hearing, an applicant challenging an ALJ's decision must show that any "conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citations omitted). Because the Court concludes

that there is no conflict—much less an apparent conflict—Plaintiff is not entitled to remand based on the ALJ's reliance on the vocational expert.

Finally, in Plaintiff's reply, Plaintiff raises another issue touched upon in the Commissioner's response brief—the fact that the ALJ did not adopt Dr. Oberlander's conclusion that Plaintiff could not follow "more detailed and complex work instructions." Instead, the ALJ limited Plaintiff to "simple, routine, repetitive work" with additional limitations for production rates and interactions with others. [A.R. 82.] Plaintiff argues that an ALJ cannot adopt come portions of a consultative examiner's report while declining to include others without any explanation. [19, at 2.] Although the Commissioner's response brief touches on the ALJ's decision to limit Plaintiff to simple, routine, and repetitive work, the Commissioner has not had the opportunity to address the specific argument raised by Plaintiff in his reply brief. Because the Court already is remanding the case, the Court will not address this argument that has not fully been presented to the Court. Without taking any position on the sufficiency of the ALJ's decision in this respect, the Court notes that the ALJ must build "an accurate and logical bridge" from the evidence to his conclusion. *Craft*, 539 F.3d at 673 (citation omitted)).

## VI. Conclusion

For all of the reasons set forth above, the Court denies the Commissioner's motion for summary judgment, reverses the decision of the Commissioner of Social Security in part, and remands this case for further proceedings consistent with this opinion.

Dated: May 23, 2019

_____
Robert M. Dow, Jr.
United States District Judge